1
2
3
4
5

Annette Shaughnessy
2115 Kawana Springs Rd., #1208
Santa Rosa, CA 95404
707-799-4869;
amshaughnessy@gmail.com

Pro Se Plaintiff

**FILED**

DEC 2 0 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6
7
8
9

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

10
11
12
13
14
15
16
17
18

ANNETTE SHAUGHNESSY

In Pro Per Plaintiff,

vs.

AT&T, a corporation (in its capacity as
employer, plan sponsor, plan administrator,
and fiduciary for the AT&T WEST
PENSION PLAN; AT&T WEST
PENSION PLAN (a bargained for pension
trust); FIDELITY INVESTMENTS, (in its
capacity as both non-fiduciary and de facto
administrator of THE AT&T WEST
PENSION BENEFIT PLAN),

Defendants.

Case No. 18   7663 EDL

**COMPLAINT**

**JURY TRIAL   YES X   NO**

19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Plaintiff files this complaint against AT&T to request that her lump-sum pension benefit,

that was intentionally and willfully denied to her in 2012, be paid to her plus interest.  Plaintiff is

a former AT&T employee and pension plan participant who voluntarily terminated employment

in 2012.   Plaintiif having used both medical and family leave toward the end of her employment.

Ms. Shaughnessy, having asked for a job position off the phones due to headset sensitivity, was

resignrf her position after being employed from August 2003 to February 2012.  Following

termination from employment, Plaintiff did not receive a benefits package letter from defendant

as AT&T claimes.  Instead, sometime in and around mid-April, Plaintiff received a single letter

1   from AT&T asking Plaintiff to "call in to take advantage of your pension benefit." Plaintiff
2   immediately contacted Fidelity Investments by phone and also logged on to the NetBenefits.com
3   website, as instructed, to exercise her benefit. The NetBenefits website operated by Fidelity,
4   while having 401k information, lacked any reference to Plaintiff having a pension benefit.
5   Plaintiff requested on the phone to a Fidelity employee that she would like to take her benefit as a
6   lump-sum which a participant can elect according to the AT&T Summary Plan Description, the
7   Fidelity employee refused and told Plaintiff she qualified for a "$130.00 per month annuity." At
8   the time, Plaintiff faintly recalls she was told by Fidelity she only had 60 days from the date of
9   her separation from the company to exercise the lump-sum, different from the "90-days" a plan
10  participant has per the Summary Plan Description and different from the "90-days" the AT&T
11  Plan Benefit Committee stated in their final appeal denial letter (Exhibit 1).  Defendant AT&T
12  acknowledges that Plaintiff called in to Fidelity during the month April and May 2012, well
13  within the 90-day period allotted time to opt for the lump-sum. On at least two occasions in April
14  and May, Plaintiff called in to ask about the lump-sum distribution of her pension benefit; or to
15  ask what her benefit would be when she turned 65 years of age, and she was told by the AT&T
16  dedicated Fidelity employee, "I don't have that information." Defendant offered Plaintiff a single
17  pension benefit option, a $130.00 per month annuity, the lowest cost pension benefit the
18  defendant could offer to a participant. To date, AT&T's West Pension Plan Administrator's have
19  repeatedly refused to comply with Plaintiff requests for an estimate in writing of what the lump-
20  sum benefit would have been as of her date of termination, 02/23/2012. Plaintiff estimates that the
21  lump-sum would have been $80,000.00. (See Exhibit 2.)

## JURISDICTION AND VENUE

23  1.     **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over this action
24  pursuant to 28 U.S.C. § 1331 and ERISA § 502(a), 29 U.S.C. § 1132(a).
25  2.     **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because it
26  transacts business in, and has significant contacts with, this District, and because ERISA provides
27  for nationwide service of process. See ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).
28  3.     **Venue.** Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. §

1   1132(e)(2), for at least the following reasons:

2        (a)     Defendant may be found in this district, as it transacts business in, and/or has

3   significant contacts with this District including because its participants earned and/or earn some

4   or all of their pension credits and receive(d) their pension payments in this District; and/or

5        (b)     The alleged breaches took place in this District because Plaintiff Shaughnessy was

6   denied benefits sought through this action should have received those benefits in this District.

7   **STATUTE OF LIMITATIONS**

8   4.     Plaintiff claims a "tolling of statute of limitations" for the ERISA causes of action due to

9   the fact that Plaintiff did not become aware of defendant concealment/denial of benefits until

10  January 2018 after Plaintiff had learned about her legal rights and decided to revisit the issue with

11  Fidelity Investments.  Plaintiff then, upon learning of the deliberate misleading information, filed

12  an administrative dispute with AT&T West Pension Plan on February 12, 2018. The West Plan

13  made a final denial decision of Plaintiff's appeal in a letter to Plaintiff dated September 26, 2018.

14  5.     Plaintiff's delay in filing a legal claim was due to defendants intentional, material

15  misrepresentation upon which the plaintiff reasonably, and without knowledge, relied on from

16  2012 to 2018.  At no time in 2012, following termination from employment, did Plaintiff receive

17  an "Accrued Benefits" statement as defendant claims; only a brief letter urging Plaintiff to call in

18  to "take advantage of your benefit."

19  6.     Defendant, as plan administrator and per their final appeal denial letter dated 9/26/2018,

20  wrote that "no legal action may be commenced or maintained against the Plan or its

21  administrators more than five years after the date" of their letter to Plaintiff.

22  **INTRADISTRICT ASSIGNMENT**

23  7.     Because this lawsuit arose in Sonoma County, it should be assigned to the San Francisco

24  Division of this Court.

25  **PARTIES**

26  8.     Plaintiff Annette Shaughnessy is a former employee of AT&T Company where she served

27  as a call center representative and service representative beginning in August of 2003.  Plaintiff

28  became a vested pension plan participant after 5 years of employment in 2008.  Plaintiff has a

1    vested and guaranteed, collectively bargained for pension benefit and is a participant AT&T West

2    Pension Program, as defined in ERISA § 3(7), 29 U.S.C. 1002(7).  Ms. Shaughnessy terminated

3    her employment with AT&T on 2/23/2012 with vested, bargained for benefits as part of the West

4    Pension Plan.  Plaintiff was a participant in the West Pension Plan, as defined in ERISA § 3(7),

5    29 U.S.C. 1002(7), during her employment with AT&T.  Plaintiff continues to have a colorable

6    claim for benefits against the West Pension Plan; against AT&T executive management; the

7    AT&T Corporation is liable for any and all benefit obligations owed by the West Pension Plan.

8    9.      Defendant AT&T West Pension Plan is an "employee pension benefit plan," within the

9    meaning of ERISA § 3(2)(A), 29 U.S.C.(2)(A) and is a "defined benefit plan," within the

10   meaning of ERISA § 3(35), 29 U.S.C. §1002(35).

11   10.     Defendant Fidelity Investments acts as a contracted third-party plan administrator of the

12   AT&T West Pension Plan.  Fidelity has a team dedicated to working solely with AT&T plan

13   participants, as such, Fidelity Investments was acting as a de-facto plan administrator when they

14   denied Plaintiff the right to exercise her right to benefits..

15   11.     Department of Labor Regulation Publication "Questions and Answers relating to fiduciary

16   responsibility under the Employee Retirement Income Security Act of 1974," updated July 10,

17   2010.  This publication states that certain positions, if persons act in a manner that indicates

18   discretionary decision making, that action by its very nature would carry fiduciary status.  (29

19   C.F.R. § 2509.75-8 at D-3.)

20                            **FACTUAL ALLEGATIONS**

21   A.     **Defendants Had a Duty Not to Mislead Pension Plan Participants**

22            **Plaintiff Mislead by AT&T Human Resources upon termination from Job**

23   12.     On February 23, 2012, Plaintiff voluntarily terminated her employment from

24   approximately 8 ½ years at AT&T since Plaintiff could not return to her call center position, and

25   no other job was available, Plaintiff elected to resign.

26   13.      In February 2012, Plaintiff received correspondence from defendant AT&T, asking her to

27   call to speak with a human resources manager about her employment status.  Plaintiff called the

28   specified phone number for AT&T human resources on February 23rd, 2012.  The human

1   resources manager instructed Plaintiff to review and sign documents to complete the employment
2   termination process.

3   14.    After the initial discussion, the human resources staff manager then told Plaintiff she
4   would "look up to see what she qualified for," after a moment, the manager then specifically told
5   Plaintiff she qualified for "$130.00 month."

6

7   **B.     Plaintiff mislead by Fidelity AT&T Dedicated Representatives & Acting Under the**
8   **Advice and Guidance of AT&T Executives, Sponsors & Plan Administrators"**

9   15.    In April of 2012, Plaintiff received a general letter from AT&T following termination
10  from employment that invited her to call in to Fidelity to "take advantage of your benefit."
11  Plaintiff called immediately the same or next day after receipt of the letter to the Fidelity number
12  provided and spoke with an AT&T dedicated Fidelity representative.  The representative told
13  Plaintiff that she qualified for a $130.00 benefit.

14  16.    When Plaintiff asked about a lump-sum, the Fidelity representative said she had not called
15  within the "60 day" window to qualify for that benefit.  When Plaintiff asked what the pension
16  benefit would be at age 65 or normal retirement age, the representative responded, "I don't have
17  that information."  Plaintiff found the Fidelity representative's verbal responses to questions to be
18  halting and delayed, as if she was being coached in what to say by someone nearby.

19  17.    In 2012, Plaintiff had an AT&T benefits online account with Fidelity Investments that she
20  held a 401k investment.  Plaintiff performed many transactions within this website in 2012
21  following termination of her employment.

22  18.    At no time did the AT&T benefits website have a "tab" for accrued pension benefit nor
23  did offer any information at all regarding pension benefits.  Both ERISA and the Code of Federal
24  Regulations require corporations provide pension plan participants information about their
25  benefits periodically and upon termination.

26  **C.     Defendant Had a Duty to Provide Pension Benefit Statements Periodically & Upon**
27  **Termination from Employment**

28  19.    Plaintiff did not receive any correspondence stating what her accrued benefits were

1 following termination from AT&T as required under law. Plaintiff did not receive an "Accrued

2 Benefit" statement from AT&T at any time while employed with the company.

3 20. Plaintiff had received the Summary Plan Description ("SPD") but wasn't clear on how the

4 plan description applied to her because it said nothing about early retirement for those employees

5 working less than 20 years for the company.

6 **D.     Defendant AT&T Has A Duty to Adhere to the Pension Plan Documents**

7 21. Beginning in February 23, 2012 with Plaintiff's conversation with the AT&T human

8 resources manager about pension benefits, continuing with the interactions with Fidelity

9 Investments and their AT&T dedicated representatives in April 2012, and further continuing with

10 the AT&T Fidelity "NetBenefits.com" website; Defendants continually failed to follow the West

11 Pension Plan documents and provide Plaintiff with accrued benefit information as required by

12 ERISA and the Pension Protection Act of 2006.

13 22. Per the AT&T Summary Plan Description, page 31, "Lump Sum Distribution – You may

14 elect a lump sum payment as an alternative form if you make the election with the 90-day period

15 ending on the (i) the day following your Termination of Employment, or (ii) the day your

16 Disability Pension is converted to a Pension Benefit. You will not receive a monthly Pension

17 Benefit if you select this option."

18 23. Plaintiff attests that she never received an "Accrued Benefits" package by mail from

19 defendant AT&T advising of accrued pension benefits earned. Instead, Plaintiff received a single

20 letter from AT&T human resources telling her to call in to "take advantage" of her pension

21 benefit.

22 24. Plaintiff recalls contacting Fidelity Investments immediately after receiving the AT&T

23 letter, in April 2012. When Plaintiff asked about taking a lump-sum pension benefit, the Fidelity

24 representative said Plaintiff was calling too late (outside of the 60-day window) to take the lump-

25 sum. Defendant Fidelity Investment failed to follow plan documents and "knowingly

26 participated" in misleading Plaintiff in violation of ERISA § 502(a)(3).

27 25. Defendant AT&T, though fully capable of retrieving call records for Fidelity Investments,

28 refuses to provide exact dates when Plaintiff contacted Fidelity Investments in April of 2012,

1    because call dates will show she contacted Fidelity within the 90-day period to exercise her right

2    to a lump-sum benefit as indicated in the Summary Plan Document and in AT&T final appeal

3    denial letter dated 9/26/2012.

4    E.    **Plaintiff has exhausted all administrative appeals with AT&T West Pension Plan**

5    26.    On or about January 31, 2018, Plaintiff called Net Fidelity customer service to see what

6    their records showed in regard to her pension benefit and asked about whether any pension

7    benefit was posted in her Net Fidelity online account.  The rep helped reset her logon credentials,

8    Plaintiff believes it may have been the first time since 2012 she accessed her AT&T NetBenefits

9    website account with Fidelity.  Plaintiff was surprised to find a posted estimated monthly annuity

10   in the amount of $459.00 per month beginning at age 65.  The Fidelity customer rep emailed the

11   SPD to Plaintiff and instructed her to look to the SPD for instructions how write a letter to dispute

12   the pension benefit.

13   27.    Plaintiff wrote a letter of dispute asking that the lump-sum distribution option she

14   requested for in April 2012 be exercised instead of receiving a monthly annuity due to Plaintiff

15   being misled by AT&T employees and Fidelity Investments.  Plaintiff's request was denied.  The

16   final appeal denial letter was issued 9/26/2018.

17   F.    **Defendant Acted in The Financial Interest of AT&T and not the Plan Participant**

18   28.    By giving incorrect pension benefit information, defendants sought to coerce Plaintiff into

19   selecting a pension payout option that would solely benefit AT&T & the West Pension Plan to the

20   financial detriment of Plaintiff.

21                          **FIRST CAUSE OF ACTION**

22        **DENIAL OF BENEFITS, ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B)**

23                          **[against all Defendants]**

24   29.    Plaintiff realleges and incorporations by reference all allegations contained in paragraphs

25   1 through 20, as if fully stated therein.

26   30.    Under ERISA § 502 (A)(1)(B), 29 U.S.C. §1132(a)(1)(B), permits a plan participant to

27   enforce their rights under the terms of the plan.  Plaintiff alleges the following elements for this

28   cause of action:

1        1) Plaintiff properly made a claim for benefits in April 2012 after responding immediately

2 to a letter from AT&T. When Plaintiff asked to exercise the lump-sum option payment for her

3 pension benefit, she was denied by Fidelity Investments employees and managers despite her

4 calling within the required 90-day election window from the date of the package mailing (per the

5 Plan terms.)

6        2) In 2018, after discovering her true plan benefits, Plaintiff filed a pension dispute with

7 AT&T; and finally exhausted the AT&T Plan's administrative appeals process September 2018.

8        3)The Plaintiff is a fully vested participate for a guaranteed, non-forfeitable, bargained for

9 pension benefit from AT&T; to date she has not been able to exercise the benefit of her choosing.

10        4) The Plaintiff asserts she was denied access to her entitled lump-sum benefit of

11 approximately $80,000.00, instead AT&T offered a much smaller and less costly benefit to

12 AT&T via an immediate pension annuity of $130.00 per month. AT&T sought to benefit itself to

13 the exclusion of plan participants.

14 31.    Wherefore Plaintiff is entitled to appropriate equitable restitution plus interest from the

15 date of the denial of benefits April 2012.

16

17                  **SECOND CAUSE OF ACTION**

18       **(Breach of Fiduciary Duty under ERISA§ 404(a)(1)(A), 29 U.S.C. §1104)**

19 **[against AT&T HR managers as plan sponsors and administrators, The West Pension Plan,**

20 **as plan administrators & Fidelity Investments as De-Facto Plan Administrator/Fiduciary]]**

21 32.    Plaintiff realleges and incorporations by reference all allegations contained in paragraphs

22 1 through 20, as if fully stated therein.

23 33.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their

24 duties solely in the interests of employee benefit plan participants and beneficiaries and for the

25 exclusive purpose of providing benefits and defraying reasonable expenses of administering the

26 plan.

27 34.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their

28 duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a

1   prudent man acting in like capacity and familiar with such matters would use in the conduct of an

2   enterprise of a like character and with like aims.

3   35.     ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires fiduciaries to discharge their

4   duties in accordance with the plan documents and instruments governing the plan insofar as such

5   documents and instruments are consistent with the provisions of ERISA.

6   36.     In committing the acts and omissions herein alleged, Defendants AT&T & the West Plan

7   have breached their fiduciary duties in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§

8   1104(a)(1)(A) and (B).

9   37.     All defendants are named to this Cause of Action solely to insure that complete relief can

10  be granted.

11  38.     Wherefore Plaintiff is entitled to appropriate equitable restitution plus interest from the

12  date of the denial of benefits April 2012.

13

14                              **THIRD CAUSE OF ACTION**

15  **Breach of Duty to Adhere to Plan Documents by Non-Fiduciary under ERISA § 502(a)(3))**

16                              **[against Fidelity Investments]**

17  39.     Plaintiff maintains she contacted Fidelity Investments in April 2012.  Defendant AT&T

18  also states in the final appeal letter that Plaintiff called in April and May 2012, but only to "ask

19  about benefits."  Plaintiff attempted to exercise her right to the lump-sum benefit well within the

20  90-day window but was told by the Fidelity representative she had to call "within 60-days," hence

21  Fidelity failed to follow plan document terms.  Plaintiff believes Fidelity call center

22  representatives and their managers acting as third-party administrators of the West Plan,

23  conspired with AT&T to only offer the least costly pension benefit possible to benefit AT&T.

24  40.     All defendants are named to this Cause of Action solely to insure that complete relief can

25  be granted.

26  41.     Wherefore Plaintiff is entitled to appropriate equitable restitution plus interest from the

27  date of the denial of benefits April 2012.

28

1

2

3                                   **PRAYER FOR RELIEF**

4      WHEREFORE, Plaintiff prays for judgment as follows:

5      A.      For appropriate equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. 1132 (a)(3),

6      including restitution of vested lump-sum benefit Plaintiff was entitled to as of the date of

7      termination of her employment from AT&T effective 02/23/2012.

8      B.      Plaintiff estimates the lump-sum benefit to be in the amount of $80,000.00 though to date,

9      AT&T refused to provide an estimate of what the lump-sum benefit would have been.  A estimate

10     from an online pension calculator is attached.

11     C.      For reasonable attorneys' fees, if any, and costs incurred by Plaintiff in the prosecution of

12     this action pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

13     D.      For pre-judgment interest and post-judgment interest on any and all amounts awarded to

14     Plaintiff; and

15     E.      For all such further and other relief as the Court deems equitable and just.

16

17                                 **DEMAND FOR JURY TRIAL**

18     Plaintiff demands a jury trial on all issues.

19     Respectfully submitted,

20     Date:  December 20, 2018          Name:

21

22

23

24

25

26

27

28

1
2
3 **VERIFICATION**
4 **Verfication of Pleading (Code. Civ. Proc., § 446)**
5 **Declaration under Penalty of Perjury Form (Code Civ. Proc., §§ 446, 2015.5)**
6
7 ANNETTE SHAUGHNESSY v. AT&T CORPORATION, et. al.,
8 Case Number:
9
10 I, ANNETTE SHAUGHNESSY, declare:
11 I am the plaintiff in the above-entitled matter.
12
13 I have read the foregoing COMPLAINT - Claim of intentional denial of benefits in violation of
14 ERISA, and know the contents thereof:
15
16 The same is true of my own knowledge, except as to those matters which are therein stated on
17 information and belief, and, as to those matters, I believe it to be true.
18
19 Executed on, December 20, 2018, at Santa Rosa, Sonoma County, California.
20 I declare (or certify) under penalty of perjury that the foregoing is true and correct.
21
22
23 _____
24 Annette Shaughnessy, Plaintiff
25
26
27
28

# EXHIBIT ONE



AT&T Services, Inc.
P.O. Box 132160
Dallas, TX 75313-2160

**CERTIFIED MAIL**
**91 7199 9991 7036 4975 0618**

September 26, 2018

Annette Shaughnessy
2115 Kawana Springs Rd.
Apt. 1208
Santa Rosa, CA  95404

Re:  Lump Sum Eligibility Dispute

Dear Ms. Shaughnessy:

In accordance with your written request received on June 1, 2018, please be advised that the Benefit Plan Committee (the "Committee"), pursuant to provisions of the West Program of the AT&T Pension Benefit Plan (the "Plan"), completed the review of your appeal on August 13, 2018. After thoroughly examining the file compiled with respect to the review of your denied claim, including any materials you submitted with your appeal, the Committee denied your appeal.  The Committee determined that under the provisions of the Plan, the facts and circumstances of your appeal, and in the exercise of its fiduciary authority, you are not eligible to receive your West Program pension benefit in the form of a Lump Sum, because you did not elect to receive one within the 90 day window after termination of employment set forth by the Plan.

**Plan Provisions**
**The West Program of the AT&T Pension Benefit Plan Amended and Restated: January 1, 2011**

Section 7.3:

"**7.3    EARLY RETIREMENT PENSION.**

7.3.1    **IN GENERAL.** A Program Participant may elect to receive his Program Pension Benefit prior to his Normal Retirement Age but reduced to reflect such Program Participant's younger age and earlier commencement of payments using the applicable reduction factors provided in Subsection 7.3.2 below.

**AT&T**

7.3.2   **AMOUNT OF EARLY RETIREMENT PENSION.** Subject to the remaining provisions of this Article and any applicable special provisions of Articles VIII and any additional applicable provisions in the Program or the Plan, the amount of the Program Participant's Early Retirement Pension will be determined in accordance with the following:

    (2)    **Does Not Satisfy Modified Rule of 75.** If a Program Participant does not satisfy the requirements of the Modified Rule of 75 as of his Termination of Employment, the amount of such Early Retirement Pension will equal such Program Participant's Normal Retirement Pension calculated under Section 7.2 but reduced by the applicable early retirement factor in the following table based on such Program Participant's age at his Annuity Starting Date."

Subsection 13.1:

    **"13.1   AUTOMATIC FORMS OF PAYMENT OF PROGRAM PENSION BENEFIT.** Except as provided in Section 13.2, a Program Participant's Pension Benefit will be paid in the form of payment applicable to such Program Participant as follows:

    13.1.1 **SINGLE LIFE ANNUITY.** If a Program Participant is living on his Annuity Starting Date and does not have a Spouse on such date, his Program Pension Benefit will automatically be paid in the form of a Single Life Annuity.

    13.1.2 **JOINT AND 50% SURVIVOR ANNUITY.** If the Program Participant is living on his Annuity Starting Date and has a Spouse on such date, his Program Pension Benefit will automatically be paid in the form of a Joint and 50% Survivor Annuity."

Subsection 13.2.4:

    **"13.2.4 LUMP SUM.** The lump sum form of payment is available to (and only to) each Program Participant at his Termination of Employment, provided the Program Participant makes an election in accordance with the following provisions:

    (1)    **Eligibility.** A Program Participant who does not make the election of a Lump-Sum payment within the applicable ninety (90) day election period will not be eligible to elect the Lump Sum form of payment...

    (3)    **Election Window.** An election of the Lump Sum must be made within the ninety (90) day period ending on (i) the day following the Program Participant's Termination of Employment, in the case of a Program Pension Benefit, or (ii) the day as of which a Disability Pension is converted to a Program Pension Benefit. The election period will be extended to the ninetieth (90th) day following the date of mailing or personal delivery of the notice described in Section 12.4 of the Plan..."



þ2

<u>AT&T Pension Benefit Plan Amended and Restated Effective as of January 1, 2011</u>

Subsection 3.1(58):

    "(58)   **Modified Rule of 75**: means with respect to each Component Pension Program other than the Southeast Management Program, the attainment by a Participant of any one of the following combinations of age and service determined as of such Participant's Termination of Employment:

        (a)    Age sixty-five (65) years and ten (10) years of a Term of Employment;

        (b)    Age fifty-five (55) years and twenty (20) years of a Term of Employment;

        (c)    Age fifty (50) years and twenty-five (25) years of a Term of Employment; or

        (d)    Any age and thirty (30) years of Term of Employment.

In addition to the above, a Program Participant with respect to the Southeast Program whose last employment with an AT&T Controlled Group Member is not with a Program Employer in respect to the Southeast Program will be granted a Program Pension Benefit from the Southeast Program based on him having satisfied the Modified Rule of 75 only if such Program Participant has a Term of Employment with Program Employers of the Southeast Program equal to at least ten (10) years as of his Termination of Employment."

<u>Facts</u>
You began employment with Pacific Bell Telephone Company on August 11, 2003, as a bargained employee eligible to participate in the Pacific Telesis Group Pension Plan, now known as the West Program, which is a component of the Plan.  During your Term of Employment ("TOE"), you incurred various periods of Family Care Leaves of Absence ("LOAs") from August 25, 2009, through November 1, 2011, and your TOE date was adjusted to September 17, 2004, after you returned to work on November 1, 2011. On January 21, 2012, you incurred another Family Care LOA, but you did not return to work from this LOA.  You remained employed by Pacific Bell Telephone Company until your termination of employment, which occurred on February 23, 2012.  As a result of your termination of employment while on LOA, your TOE date is adjusted to October 20, 2004, in accordance with the applicable LOA policies.

In March 2012, you contacted the Fidelity Service Center regarding your pension and savings plan benefits various times.  You did not indicate an intent to commence and did not reference a lump sum during your conversations with Fidelity Service Center.  You also spoke with Fidelity retail branches during this time period; the content of those discussions is unknown, but the standard procedure for Fidelity retail associates is to direct any questions regarding AT&T pension payment options back to the Fidelity Service Center.

Following your February 23, 2012 termination of employment, the Fidelity Service Center mailed an Accrued Benefit ("AB") Statement on April 11, 2012 to your address of record.  The AB statement reflected your eligibility to receive your West Program Deferred Vested Pension



("DVP") benefit upon your attainment of age 65, payable as a Single Life Annuity ("SLA") in the amount of $459.98. The AB Statement additionally indicated that you were eligible to elect to commence your pension benefit in the form of a Lump Sum as long as you completed this election within 90 days of the receipt of your AB Statement. The address on record was 264 Los Alamos Rd., Santa Rosa, CA, 95409, which we have confirmed was your permanent address on file with the Fidelity Service Center during your 90-day election window following the April 11, 2012 AB Statement mail date. This AB package was not returned to the Fidelity Service Center as undeliverable mail.

From April 2012 through May 2012, you contacted the Fidelity Service Center regarding your pension and savings plan benefits. Each time you called regarding your pension account, the phone call was transferred to a dedicated AT&T representative.

In March 2013, the Fidelity Service Center mailed a letter to you, notifying you that you were eligible to commence your West Program DVP benefit, in the form of an annuity payment, at any time. Due to system limitations, a copy of the exact letter mailed to you was not available; however, a sample letter mailed to this population has been provided.

On July 15, 2014, you contacted the Fidelity Service Center and stated that you attempted to review your pension benefit online, but claimed that you were not able to see the value of your pension benefit at age 65, nor were you able to determine if a Lump Sum was available to you. The Fidelity Service Center representative confirmed that under the West Program, a Lump Sum was only available within 90 days from your date of termination. The Fidelity Service Center representative also confirmed your AB of $459.98 at age 65. During this call, you also claimed that you received a letter approximately a year after you terminated employment that indicated you would be eligible for a pension benefit of $100 per month.

On January 31, 2018, you contacted the Fidelity Service Center to request a copy of your Summary Plan Description ("SPD"). During this call, you stated that you were never offered a Lump Sum and claimed when you contacted the Fidelity Service Center previously, you were advised that you were only eligible for a pension benefit of $100 per month, which you did not wish to commence at that time. The Fidelity Service Center representative assisted you in accessing your account online, and you confirmed that you were able to view your $459.98 AB amount. Subsequently, you contacted the Fidelity Service Center on February 2, 2018, wishing to dispute your current ineligibility for a Lump Sum, as you asserted that you were never offered a Lump Sum payment option after your termination of employment. You confirmed that you wished to dispute your ineligibility for a Lump Sum and stated that you would submit your dispute in writing.

On February 15, 2018, the Fidelity Service Center received your claim against the Plan, dated February 12, 2018, in which you requested to receive your West Program pension benefit in the form of a Lump Sum. In your claim, you indicated that when you contacted the Fidelity Service Center in 2012 to inquire about your pension benefit, you were advised at that time that you did not qualify for a Lump Sum payment option, and, instead, you were only eligible for a monthly annuity DVP benefit of $100. You requested to be notified of the amount your Lump Sum benefit, and after this notification, you would decide if you wanted to commence your DVP benefit as a Lump Sum or have your pension benefit remain as an annuity. The Fidelity Service Center acknowledged receipt of the claim on February 16, 2018.

**AT&T**

You contacted the Fidelity Service Center on April 9, 2018, and requested summaries of the notes or conversations that occurred on your account regarding your pension benefit from 2012. The Fidelity Service Center representative stated that you would need a subpoena or court order to obtain call transcripts from the Fidelity Service Center. The Fidelity Service Center representative also confirmed that you were eligible to elect a Lump Sum payment option within 90 days of your date of termination. You stated that you attempted to collect the Lump Sum in 2012; however, you asserted that you were not able to access your account online and that a Fidelity Service Representative advised your that you were only eligible for a monthly pension benefit of $100. You also requested Plan documents and an "AT&T stock letter" from 2012. The Fidelity Service Center representative advised you to write to the Claims and Appeals department for this information.

On April 17, 2018, the Fidelity Service Center received a letter from you, dated April 9, 2018, in which you requested Plan documents and to update your address on file. Additionally, you requested summaries of your phone conversations with the Fidelity Service Center in 2012, during which your pension benefit was discussed. As a result, the Fidelity Service Center Employee Advocacy Group (EAG) submitted your Plan document request to AT&T Operations on April 20, 2018, and the EAG mailed you a letter confirming that your request for Plan documents was submitted to AT&T for fulfillment, and you would receive those documents under separate cover. The letter also confirmed that our records indicated you contacted the Fidelity Service Center on April 9, 2018 to update your address to 2115 Kawana Springs Rd., Apt 1208, Santa Rosa, CA, 95404. AT&T Operations fulfilled your Plan document request on April 30, 2018.

The Fidelity Service Center mailed a claim determination letter to your current address of record on May 16, 2018, denying your request to receive your West Program pension benefit in the form of a Lump Sum since you was mailed the appropriate AB Statement following your termination of employment, and the AB Statement contained the necessary disclaimer concerning the 90 day Lump Sum election window. Additionally, the Fidelity Service Center advised that if you had elected to commence your pension benefit in the form of a SLA upon your termination of employment, your monthly SLA would have been $130.17, which would have been reduced from your AB of $459.98 due to an early retirement factor.

On June 1, 2018, the Fidelity Service Center received your appeal, dated May 29, 2018, in which you requested to receive your West Program pension benefit in the form of a Lump Sum since you believed you were advised that you were not eligible for a Lump Sum payment option, and on June 8, 2018, the Fidelity Service Center received a second undated appeal letter, which was materially similar to the appeal letter received on June 1, 2018. In your appeal, you also requested copies of your interactions with the Fidelity Service Center regarding your benefit in 2012, in addition to a copy of the AB statement that was mailed to your address on record after your termination of employment. Additionally, you requested a copy of a letter you indicated was mailed to all AT&T employees regarding AT&T's election not to deposit $200,000,000.00 in the pension trust, but electing to deposit AT&T stock instead. You also requested records of your online interactions when you attempted to access your account via NetBenefits.com in 2012. The Fidelity Service Center acknowledged receipt of your appeal on June 5, 2018, and AT&T mailed an appeal extension letter to you on July 16, 2018.

**AT&T**

**Determination of the Committee**

After thoroughly examining the file compiled with respect to the review of your denied claim, including any materials submitted with the appeal, the Committee denied your appeal. The Committee determined that under the provisions of the Plan, the facts and circumstances of the appeal, and in the exercise of its fiduciary authority, you are not eligible to receive your West Program pension benefit in the form of a Lump Sum, because you did not elect to receive one within the 90 day window after termination of employment set forth by the Plan.

The Committee has the exclusive, discretionary authority to interpret pension related matters for the Company. Under the terms of the Plan and the by-laws that govern the Committee, this action is final and is not subject to further administrative review. You have exhausted the internal administrative review process. Federal law gives you the right to bring an action under Section 502(a) of the Employee Retirement Income Security Act ("ERISA"). However, no legal action may be commenced or maintained against the Plan or its administrators more than five years after the date of this letter. In addition, you are entitled to receive, upon request and free of charge, reasonable access to and copies of, all documents, records, and other information relevant to your claim for benefits. The Committee considers this matter closed.

Additionally on September 5, 2018, I received your letter dated August 27, requesting employment records. I forwarded your letter to the AT&T Employee Personnel Records Team, which will respond to you directly about that request in a separate letter.

Sincerely,

Jeremy Siegel
Secretary – Benefit Plan Committee

**AT&T**

# EXHIBIT TWO



## Lump Sum Value

**Basic Information**

| | |
|---|---|
| Date of Birth | 8/19/1960 |
| Current Age (Completed Months) | 64.3333 |
| Retirement Age | 53 |
| Beneficiary Date of Birth | N/A |
| Beneficiary Years Younger | N/A |
| Benefit Start Date | 8/19/2013 |
| Determination Date | 1/1/2025 |

**Actuarial Assumptions:**

| | |
|---|---|
| Mortality Table | APPLICABLE_ANNUITY_TABLE_2012 |
| Age Set Back | 0 |
| Beneficiary Mortality Table | APPLICABLE_ANNUITY_TABLE_2012 |
| Beneficiary Age Set Back | 0 |
| Interest Rate | 3% |

**Lump Sum Information:**

| | |
|---|---|
| Monthly Benefit | $ 459.00 |
| Normal Form of Payment | Life-Only |
| Lump Sum Factor | 14.79978 |

**Lump Sum Calculation:**

Lump Sum = Monthly Benefit x 12 x Lump Sum Factor
Lump Sum = $ 459.00 x 12 x 14.79978
**Lump Sum = $ 81,517.19**

*Note: The information provided is for your reference only. Consult an enrolled actuary or a qualified financial consultant prior to making any financial decisions.*

# EXHIBIT THREE


AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

was prudent, and thus whether the advance was for reasonable expenses, is to be judged pursuant to section 404 of the Act (relating to fiduciary responsibilities).

[40 FR 31755, July 29, 1975. Redesignated at 41 FR 1906, Jan. 13, 1976]

§ 2509.75–8  Questions and answers relating to fiduciary responsibility under the Employee Retirement Income Security Act of 1974.

The Department of Labor today issued questions and answers relating to certain aspects of fiduciary responsibility under the Act, thereby supplementing ERISA IB 75–5 (29 CFR 2555.75–5) which was issued on June 24, 1975, and published in the FEDERAL REGISTER on July 28, 1975 (40 FR 31598).

Pending the issuance of regulations or other guidelines, persons may rely on the answers to these questions in order to resolve the issues that are specifically considered. No inferences should be drawn regarding issues not raised which may be suggested by a particular question and answer or as to why certain questions, and not others, are included. Furthermore, in applying the questions and answers, the effect of subsequent legislation, regulations, court decisions, and interpretive bulletins must be considered. To the extent that plans utilize or rely on these answers and the requirements of regulations subsequently adopted vary from the answers relied on, such plans may have to be amended.

An index of the questions and answers, relating them to the appropriate sections of the Act, is also provided.

INDEX

Key to question prefixes: D—refers to definitions; FR—refers to fiduciary responsibility.

| Section No. | Question No. |
|---|---|
| 3(21)(A) | D–2, D–3, D–4, D–5. |
| 3(38) | FR–15. |
| 402(c)(1) | FR–12. |
| 402(c)(2) | FR–15. |
| 402(c)(3) | FR–15. |
| 403(a)(2) | FR–15. |
| 404(a)(1)(B) | FR–11, FR–17. |
| 405(a) | FR–13, FR–14, FR–16. |
| 405(c)(1) | FR–12, FR–15. |
| 405(c)(2) | D–4, FR–13, FR–14, FR–16. |
| 412 | D–2. |

NOTE: Questions D–2, D–3, D–4, and D–5 relate to not only section 3(21)(A) of title I of the Act, but also section 4975(e)(3) of the Internal Revenue Code (section 2003 of the Act). The Internal Revenue Service has indicated its concurrence with the answers to these questions.

D–2 Q: Are persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to the plan:

(1) Application of rules determining eligibility for participation or benefits;
(2) Calculation of services and compensation credits for benefits;
(3) Preparation of employee communications material;
(4) Maintenance of participants' service and employment records;
(5) Preparation of reports required by government agencies;
(6) Calculation of benefits;
(7) Orientation of new participants and advising participants of their rights and options under the plan;
(8) Collection of contributions and application of contributions as provided in the plan;
(9) Preparation of reports concerning participants' benefits;
(10) Processing of claims; and
(11) Making recommendations to others for decisions with respect to plan administration?

A: No. Only persons who perform one or more of the functions described in section 3(21)(A) of the Act with respect to an employee benefit plan are fiduciaries. Therefore, a person who performs purely ministerial functions such as the types described above for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

However, although such a person may not be a plan fiduciary, he may be subject to the bonding requirements contained in section 412 of the Act if he handles funds or other property of the plan within the meaning of applicable regulations.

The Internal Revenue Service notes that such persons would not be considered plan fiduciaries within the meaning of section 4975(e)(3) of the Internal Revenue Code of 1954.

D–3 Q: Does a person automatically become a fiduciary with respect to a plan by reason of holding certain positions in the administration of such plan?

A: Some offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in section

**Employee Benefits Security Admin., Labor** §2509.75–8

3(21)(A) of the Act. For example, a plan administrator or a trustee of a plan must, be the very nature of his position, have "discretionary authority or discretionary responsibility in the administration" of the plan within the meaning of section 3(21)(A)(iii) of the Act. Persons who hold such positions will therefore be fiduciaries.

Other offices and positions should be examined to determine whether they involve the performance of any of the functions described in section 3(21)(A) of the Act. For example, a plan might designate as a "benefit supervisor" a plan employee whose sole function is to calculate the amount of benefits to which each plan participant is entitled in accordance with a mathematical formula contained in the written instrument pursuant to which the plan is maintained. The benefit supervisor, after calculating the benefits, would then inform the plan administrator of the results of his calculations, and the plan administrator would authorize the payment of benefits to a particular plan participant. The benefit supervisor does not perform any of the functions described in section 3(21)(A) of the Act and is not, therefore, a plan fiduciary. However, the plan might designate as a "benefit supervisor" a plan employee who has the final authority to authorize or disallow benefit payments in cases where a dispute exists as to the interpretation of plan provisions relating to eligibility for benefits. Under these circumstances, the benefit supervisor would be a fiduciary within the meaning of section 3(21)(A) of the Act.

The Internal Revenue Service notes that it would reach the same answer to this question under section 4975(e)(3) of the Internal Revenue Code of 1954.

D–4 Q: In the case of a plan established and maintained by an employer, are members of the board of directors of the employer fiduciaries with respect to the plan?

A: Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries only to the extent that they have responsibility for the functions described in section 3(21)(A) of the Act. For example, the board of directors may be responsible for the selection and retention of plan fiduciaries. In such a case, members of the board of directors exercise "discretionary authority or discretionary control respecting management of such plan" and are, therefore, fiduciaries with respect to the plan. However, their responsibility, and, consequently, their liability, is limited to the selection and retention of fiduciaries (apart from co-fiduciary liability arising under circumstances described in section 405(a) of the Act). In addition, if the directors are made named fiduciaries of the plan, their liability may be limited pursuant to a procedure provided for in the plan instrument for the allocation of fiduciary responsibilities among named fiduciaries or for the designation of

persons other than named fiduciaries to carry out fiduciary responsibilities, as provided in section 405(c)(2).

The Internal Revenue Service notes that it would reach the same answer to this question under section 4975(e)(3) of the Internal Revenue Code of 1954.

D–5 Q: Is an officer or employee of an employer or employee organization which sponsors an employee benefit plan a fiduciary with respect to the plan solely by reason of holding such office or employment if he or she performs none of the functions described in section 3(21)(A) of the Act?

A: No, for the reasons stated in response to question D–2.

The Internal Revenue Service notes that it would reach the same answer to this question under section 4975(e)(3) of the Internal Revenue Code of 1954.

FR–11 Q: In discharging fiduciary responsibilities, may a fiduciary with respect to a plan rely on information, data, statistics or analyses provided by other persons who perform purely ministerial functions for such plan, such as those persons described in D–2 above?

A: A plan fiduciary may rely on information, data, statistics or analyses furnished by persons performing ministerial functions for the plan, provided that he has exercised prudence in the selection and retention of such persons. The plan fiduciary will be deemed to have acted prudently in such selection and retention if, in the exercise of ordinary care in such situation, he has no reason to doubt the competence, integrity or responsibility of such persons.

FR–12 Q: How many fiduciaries must an employee benefit plan have?

A: There is no required number of fiduciaries that a plan must have. Each plan must, of course, have at least one named fiduciary who serves as plan administrator and, if plan assets are held in trust, the plan must have at least one trustee. If these requirements are met, there is no limit on the number of fiduciaries a plan may have. A plan may have as few or as many fiduciaries as are necessary for its operation and administration. Under section 402(c)(1) of the Act, if the plan so provides, any person or group of persons may serve in more than one fiduciary capacity, including serving both as trustee and administrator. Conversely, fiduciary responsibilities not involving management and control of plan assets may, under section 405(c)(1) of the Act, be allocated among named fiduciaries and named fiduciaries may designate persons other than named fiduciaries to carry out such fiduciary responsibilities, if the plan instrument expressly provides procedures for such allocation or designation.

FR–13 Q: If the named fiduciaries of an employee benefit plan allocate their fiduciary

365

responsibilities among themselves in accordance with a procedure set forth in the plan for the allocation of responsibilities for operation and administration of the plan, to what extent will a named fiduciary be relieved of liability for acts and omissions of other named fiduciaries in carrying out fiduciary responsibilities allocated to them?

A: If named fiduciaries of a plan allocate responsibilities in accordance with a procedure for such allocation set forth in the plan, a named fiduciary will not be liable for acts and omissions of other named fiduciaries in carrying out fiduciary responsibilities which have been allocated to them, except as provided in section 405(a) of the Act, relating to the general rules of co-fiduciary responsibility, and section 405(c)(2)(A) of the Act, relating in relevant part to standards for establishment and implementation of allocation procedures.

However, if the instrument under which the plan is maintained does not provide for a procedure for the allocation of fiduciary responsibilities among named fiduciaries, any allocation which the named fiduciaries may make among themselves will be ineffective to relieve a named fiduciary from responsibility or liability for the performance of fiduciary responsibilities allocated to other named fiduciaries.

FR–14 Q: If the named fiduciaries of an employee benefit plan designate a person who is not a named fiduciary to carry out fiduciary responsibilities, to what extent will the named fiduciaries be relieved of liability for the acts and omissions of such person in the performance of his duties?

A: If the instrument under which the plan is maintained provides for a procedure under which a named fiduciary may designate persons who are not named fiduciaries to carry out fiduciary responsibilities, named fiduciaries of the plan will not be liable for acts and omissions of a person who is not a named fiduciary in carrying out the fiduciary responsibilities which such person has been designated to carry out, except as provided in section 405(a) of the Act, relating to the general rules of co-fiduciary liability, and section 405(c)(2)(A) of the Act, relating in relevant part to the designation of persons to carry out fiduciary responsibilities.

However, if the instrument under which the plan is maintained does not provide for a procedure for the designation of persons who are not named fiduciaries to carry out fiduciary responsibilities, then any such designation which the named fiduciaries may make will not relieve the named fiduciaries from responsibility or liability for the acts and omissions of the persons so designated.

FR–15 Q: May a named fiduciary delegate responsibility for management and control of plan assets to anyone other than a person who is an investment manager as defined in section 3(38) of the Act so as to be relieved of

liability for the acts and omissions of the person to whom such responsibility is delegated?

A: No. Section 405(c)(1) does not allow named fiduciaries to delegate to others authority or discretion to manage or control plan assets. However, under the terms of sections 403(a)(2) and 402(c)(3) of the Act, such authority and discretion may be delegated to persons who are investment managers as defined in section 3(38) of the Act. Further, under section 402(c)(2) of the Act, if the plan so provides, a named fiduciary may employ other persons to render advice to the named fiduciary to assist the named fiduciary in carrying out his investment responsibilities under the plan.

FR–16 Q: Is a fiduciary who is not a named fiduciary with respect to an employee benefit plan personally liable for all phases of the management and administration of the plan?

A: A fiduciary with respect to the plan who is not a named fiduciary is a fiduciary only to the extent that he or she performs one or more of the functions described in section 3(21)(A) of the Act. The personal liability of a fiduciary who is not a named fiduciary is generally limited to the fiduciary functions, which he or she performs with respect to the plan. With respect to the extent of liability of a named fiduciary of a plan where duties are properly allocated among named fiduciaries or where named fiduciaries properly designate other persons to carry out certain fiduciary duties, see question FR–13 and FR–14.

In addition, any fiduciary may become liable for breaches of fiduciary responsibility committed by another fiduciary of the same plan under circumstances giving rise to co-fiduciary liability, as provided in section 405(a) of the Act.

FR–17 Q: What are the ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries with respect to these appointments?

A: At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan. No single procedure will be appropriate in all cases; the procedure adopted may vary in accordance with the nature of the plan and other facts and circumstances relevant to the choice of the procedure.

[40 FR 47491, Oct. 9, 1975. Redesignated at 41 FR 1906, Jan. 13, 1976]